UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NORWICH UNIVERSITY,<br><br>Claimant,<br><br>v.<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED,<br><br>Respondent,<br><br>v.<br><br>PUBLIC FINANCIAL MANAGEMENT, INC., and PFM ASSET MANAGEMENT LLC,<br><br>Subpoena Recipients. | CIVIL ACTION<br>NO. 1:15-cv-12878 |

**PETITION TO ENFORCE ARBITRATION SUBPOENA**

Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") respectfully petitions the Court to issue an order compelling Public Financial Management, Inc. and PFM Asset Management LLC (together, "PFM") to comply with a subpoena issued by an arbitrator sitting in this District. A copy of the subpoenas subject to this petition are attached as **Exhibits A and B** to the Declaration of Jeff Goldman ("Goldman Decl.") submitted in support of this motion. Merrill Lynch submits this petition under the Federal Arbitration Act, 9 U.S.C. § 7 and the other laws referenced below. In support of this petition, Merrill Lynch states as follows:

**Background**

1. In February 2014, Norwich University ("Norwich") commenced an arbitration proceeding in which Norwich is the sole claimant and Merrill Lynch is the sole respondent. The arbitration is proceeding under the Code of Arbitration Procedure of the Financial Industry

Regulatory Authority ("FINRA").

2. Bothe Norwich and Merrill Lynch signed submission agreements in which they agreed to Norwich's claims being decided by a panel of arbitrators, under the FINRA rules.

3. A final hearing in the arbitration is set for late September, 2015. Preliminary hearings have already occurred.

4. A hearing has been scheduled for July 15, 2015, in Boston, before the Panel Chair, in order to hear evidence pertaining to the authentication of documents to be produced by PFM.

5. Norwich's arbitration claims stem from a 2006 issuance of municipal bonds structured as auction rate securities. The bonds were issued in order to refinance debt owed by Norwich and to finance Norwich's construction of a new student center.

6. Norwich alleges, among other things, that at the time of the 2006 issuance, Merrill Lynch provided insufficient disclosure of its role in the market for auction rate securities.

7. PFM was financial advisor and swap advisor in connection with the 2006 issuance. In those roles, PFM was Norwich's fiduciary and its primary source of information regarding the bond and swap markets.

8. PFM's communications with Norwich are relevant to Norwich's understanding of the 2006 issuance and also to the extent of Norwich's purported reliance on Merrill Lynch.

9. Norwich did not have an automatic document retention system; and it stands to reason that Norwich will not be able to produce all of its communications with PFM relating to the 2006 issuance.

10. In addition, PFM's knowledge is relevant insofar as its knowledge as agent would be imputed to Norwich as principal.

11. PFM is not a party to the arbitration and is not subject to party discovery in the

arbitration.

12. On April 6, 2015, In light of PFM's position in the 2006 financing, the Chair of the Arbitration Panel issued a subpoena to "The PFM Group," which is the name PFM uses on its website and marketing materials. The April 6 subpoena defined "you" and "PFM" as the PFM Group broadly, "including but not limited to Public Financial Management, Inc. and PFM Asset Management LLC". The April 6 subpoena is attached as **Exhibit C** to the Goldman Declaration.

13. Merrill Lynch promptly served the April 6 subpoena on PFM.

14. The April 6 subpoena allowed PFM 60 days to produce documents and also commanded PFM to appear for testimony before the arbitration panel.

15. PFM did not reply to the subpoena within the 60 days provided.

16. On Thursday June 11, counsel for Merrill Lynch sent a letter to PFM seeking a response to the subpoena. A copy of this letter is attached as **Exhibit D** to the Goldman Declaration.

17. On Friday June 12, June Matte, managing director at PFM and head of PFM's Higher Education Group called counsel for Merrill Lynch and said that PFM intended to cooperate with the subpoena and to provide responsive documents. *See* Goldman Decl. ¶ 6. Ms. Matte explained that PFM's delay in responding to the subpoena was due to the unexpected passing of PFM's general counsel, Joseph J. Connolly, in late May. *See* http://articles.philly.com/2015-05-29/news/62771577_1_joseph-j-race-st-james-j. *See* Goldman Decl. ¶ 6.

18. On June 16, 2015, counsel to Merrill Lynch received a voicemail from Cheryl Maddox, whose title is Assistant General Counsel at "the PFM Group." Counsel to Merrill

Lynch spoke with Ms. Maddox on June 17. *See* Goldman Decl. ¶ 7. Ms. Maddox stated that PFM did not, in fact, intend to respond to the April 6 subpoena because PFM is not a FINRA member and because "the PFM Group" is a only "a marketing name," not the proper name of the entity that provided financial services to Norwich University. *Id.*

19. On June 19, 2015, Merrill Lynch asked the Panel Chair to issue supplemental subpoenas compelling PFM to appear and produce documents at a hearing to be held in Boston on July 15, 2015. The supplemental subpoenas sought production of the same documents requested in the April 6 subpoena but were addressed to Public Financial Management, Inc. and PFM Asset Management LLC, rather than to "The PFM Group." A copy of the motion submitted to the arbitration panel is attached as **Exhibit E** to the Goldman Declaration.

20. On June 25, 2015, the Panel chair issued the subpoenas attached as **Exhibits A and B**. The subpoenas were not delivered to counsel for Merrill Lynch until June 30, 2015. *See* Goldman Decl. ¶¶ 2-3.

21. On July 1, 2015, Merrill Lynch served the June 25 subpoenas upon PFM.

22. In light of PFM's previous representation that it would not comply with an arbitral subpoena, Merrill Lynch now seeks an order from this court under 9 U.S.C. § 7, which authorizes the Court to order compliance with an arbitration subpoena.

**Parties and Non-Parties**

23. Norwich is a Vermont non-profit corporation with a principal pace of business in Northfield, Vermont.

24. Merrill Lynch is a Delaware corporation with a principal place of business in Charlotte, North Carolina.

25. Public Financial Management, Inc. maintains and has maintained at all relevant

times an office in Boston, Massachusetts, and, principally through its Boston office, provided services to Norwich in connection with the 2006 bonds that gave rise to the arbitration between Norwich and Merrill Lynch.

26. PFM Asset Management LLC maintains and has maintained at all relevant times an office in Boston, Massachusetts, and, principally through its Boston office, provided services to Norwich in connection with an interest rate swap transacted in connection with the 2006 bonds that gave rise to the arbitration between Norwich and Merrill Lynch.

**Jurisdiction**

27. This Court has jurisdiction under 28 U.S.C. § 1332 because complete diversity exists between the parties to the arbitration, and the amount in controversy exceeds $75,000. In support of this statement, copies of the Statement of Claim and Answer filed in the Arbitration are attached as **Exhibit F** and **Exhibit G** to the Goldman Declaration.

**Venue**

28. Venue is appropriate in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in Massachusetts, which is the site of the PFM office that provided services in connection with Norwich's 2006 bond offering. *See* 28 U.S.C. § 1391(b)(2).

29. Venue is also appropriate in this District under 9 U.S.C § 7 because the subpoena commands PFM to attend a hearing before arbitrators sitting in this District. *See* 9 U.S.C. § 7.

**Authority of this Court to Enforce the Subpoena**

30. Norwich brought arbitration claims against Merrill Lynch arising from a transaction involving interstate commerce (issuance of a bond evidencing indebtedness of a Vermont university, which was to be underwritten by a Delaware corporation, remarketed and

auctioned in New York, and sold on the nation securities market) and both parties agreed to submit those claims to arbitration. Accordingly, the arbitration is subject to the Federal Arbitration Act, 9 U.S.C. §§ 2 *et seq*.

31. This petition is properly styled in the form of a motion, pursuant to 9 U.S.C. § 6.

32. The Court may grant this petition under 9 U.S.C. § 7, which provides:

> The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

33. The requirements of 9 U.S.C. § 7 are satisfied. The Panel Chair has signed a subpoena on behalf of, and with authority for, the entire arbitration panel.[1] The subpoena commands PFM to attend a hearing to be held before an arbitrator sitting in this District. In addition, PFM has stated that it will not comply with a subpoena from a FINRA arbitration panel absent a court order that it do so.

34. While there is no First Circuit case on point, persuasive authority holds that the

[1] This is the procedure contemplated under the FINRA Code of Arbitration Procedure. *See* FINRA Code Arb. P. § 12503(d)(3) ("Discovery-related motions are decided by one arbitrator, generally the chairperson.").

Court has authority to compel PFM's appearance at the hearing scheduled for July 15 and to bring documents to that hearing. *See Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567, 579 (2d Cir. 2005) ("Section 7's reference to hearings 'before [the arbitrators] *or any of them*' suggests that the provision authorizes the use of subpoenas at preliminary proceedings even in front of a single arbitrator, before the full panel hears the more central issues.") (internal quotation marks omitted); *Hay Grp., Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 413 (3d Cir. 2004) (Chertoff, J., concurring) ("Under section 7 of the Federal Arbitration Act, arbitrators have the power to compel a third-party witness to appear with documents before a single arbitrator, who can then adjourn the proceedings.").[2]

**Necessity of the Subpoenas**

35. PFM was the financial advisor for the 2006 bond issuance. As the financial advisor, PFM was responsible for advising the conduit issuer and Norwich on the structure of the bonds and the risks of the issuance.

36. In its role as advisor, PFM frequently communicated with Norwich, including in emails and meetings that did not include Merrill Lynch.

37. Norwich may not have retained all of its records and communications from the relevant period. In fact, as of July 1, Norwich has not, produced any documents to Merrill Lynch.

38. For these reasons, PFM is likely to have relevant documents not recoverable from any other source.

39. In addition, PFM's knowledge and understanding are independently relevant, even apart from PFM's communications with Norwich. PFM was the fiduciary advisor and

---

[2] As Judge Chertoff further explained, "In many instances, of course, the inconvenience of making such a personal appearance may well prompt the witness to deliver the documents and waive presence." Such an outcome would be appropriate here.

agent to Norwich. Accordingly, PFM's knowledge is imputed to Norwich. *See, e.g., Solomon v. Design Dev., Inc.*, 143 Vt. 128, 131, 465 A.2d 234, 236 (1983) ("[A]s a general rule, notice to an agent is notice to the principal."). Merrill Lynch expects to obtain evidence that PFM, and by imputation Norwich, was aware of information Norwich contends Merrill Lynch was obligated to disclose.

40. In short, PFM, while a non-party, played an essential role in the underlying transaction and has a central place in providing documents necessary for a fair adjudication of Norwich's claims.

**Necessity of Court Order**

41. Absent an order from this Court, PFM maintains that it is outside the authority of the arbitrators and will not comply with the subpoenas.

**Relief Requested**

For the reasons set forth above, Merrill Lynch respectfully requests that the Court

A. Issue an order compelling Public Financial Management, Inc. and PFM Asset Management LLC to comply with the June 25 subpoenas.

B. Retain jurisdiction over this matter for the purpose of ensuring compliance with such an order, including through the further steps allowed by 9 U.S.C. § 7.

Dated: July 2, 2015

/s/ Timothy P. Burke
Timothy P. Burke, BBO # 558893
timothy.burke@morganlewis.com
Matthew C. Applebaum, BBO # 653606
matt.applebaum@morganlewis.com

/s/ Jeff Goldman
Jeff Goldman, BBO #660870
jeff.goldman@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA 02110
617.951.8000

*Attorneys for Merrill Lynch*

**CERTIFICATE OF SERVICE**

I certify that on July 2, 2015, I caused a copy of the foregoing petition to be served upon counsel for Norwich University.

/s/ Jeff Goldman